COMMISSIONER OF INTERNAL REVE-
NUE v. SAGINAW & MANISTEE
LUMBER CO.
No. 8065.

Circuit Court of Appeals, Seventh Circuit.

Feb. 27, 1943.

Samuel O. Clark, Jr., Sewall Key, Edward First, A. F. Prescott, J. P. Wenchel, and Charles E. Lowery, all of Washington, D. C., for petitioner.

Robert P. Smith, Wm. Ristig, and K. M. Orser, all of Washington, D. C. (Smith, Ristig & Smith, of Washington, D. C., of counsel), for respondent.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The respondent-taxpayer, Saginaw & Manistee Lumber Company, is a corporation engaged in the business of running a saw-mill, and in using some of the lumber in certain manufacturing processes. It owns its own power plant, and from the power plant sells electricity to outsiders.

The respondent was in financial difficulties and to assure the payment of its bonds, it entered into a contract in January 1936 with the Bondholders' Protective Committee and the trustees, whereby the respondent agreed to pay into a fund for the retirement of its bonds $2.50 for each thousand feet of lumber sold or used, as shown by a monthly inventory and check. In 1936 and 1937 the respondent paid sums under this contract to the corporate trustee by direction of the Bondholders' Protective Committee, and then claimed the right to deduct such payments in computing its undistributed profits on its income tax returns for 1936 and for 1937, pursuant to Section 26(c) (2) of the Revenue Act of 1936, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, pages 835, 836.[1]

The Commissioner disallowed the deductions and assessed a deficiency. The Board of Tax Appeals disallowed the deficiency assessment, and the Commissioner appeals. The question we have is: Whether a contract requiring the taxpayer corporation to pay to a trustee for the reduction of an outstanding indebtedness a stated amount for each thousand feet of logs and lumber sold or used by it during each month, is a contract which "expressly deals with the disposition of earnings and profits of the taxable year" within the meaning of Section 26(c) (2) of the Revenue Act of 1936.

In other words, does the fact that by the contract the payments were not required to be made out of the earnings and profits of the taxable year, but might be made from any source from which the taxpayer could get the money, prevent the taxpayer from enjoying the benefits of the deduction? The Board in allowing the deduction in the case at bar based its decision on its opinion in Michigan Silica Co. v. Commissioner of Internal Revenue, 41 B. T. A. 511, affirmed 6 Cir., 124 F.2d 397. In that case, the taxpayer was required by contract to deposit in a sinking fund 25 cents for each ton of sand sold.

The authority of that case was expressly rejected by the Second Circuit in Helvering v. Magnus Beck Brewing Co., Inc., 132 F. 2d 379. In that case, under a contract made in 1934 the taxpayer, who was in financial difficulties, agreed to pay into a fund for the benefit of its creditors so much per barrel of beer sold. These payments the taxpayer sought to deduct from its undistributed profits tax under the same

---

[1] "Sec. 26. Credits of Corporations.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \*

(c) Contracts Restricting Payment of Dividends.

\* \* \* \* \*

(2) Disposition of profits of taxable year. An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word 'debt' does not include a debt incurred after April 30, 1936."

Section 26(c) (2). The taxpayer had no income except that from the sale of beer. The taxpayer argued that since it had no source of income but that from the sale of beer, the sums it paid into the creditors' fund of necessity must have come from the earnings and profits of the year. The court rejected this argument and held that it was the contract that controlled and not the choice of the taxpayer as to where the money was to come from, pointing out that the taxpayer might have had funds from previous years and that there was nothing in the contract that would have prevented the use of such funds to apply to the creditors' obligations.

We agree with the Second Circuit in its opinion in the Magnus Beck Brewing Co. case. On its factual situation, it was somewhat different from the case we have, in that there the taxpayer had but one source of income from which to derive the payments that were made into the creditors' fund, while in our case there were sources of income other than the sale or use of the lumber. In both cases, the taxpayer could have made the payments out of funds derived from any source. We, too, think the contract controls and not the ability of the company to obtain funds from other sources with which to meet its debt payments. The money to be paid into the fund in the case at bar was not even required to come from the sale or an accounting for the use of the lumber. The sale and use of the lumber were only the measure of the payments that were to be made into the fund, and were not the designation of the source of the funds.

In order to be allowable as a deduction, we think the contract in every instance must require the payments to be made out of the earnings and profits for the taxable year. In other words, the payments made, to be deductible, must be laid directly against the earnings and profits of the year for which the deduction is claimed.

Other Circuits agree with the conclusion we have reached. In Helvering v. Moloney Electric Co., 120 F.2d 617, 620, the Eighth Circuit was dealing with a provision in a mortgage that the mortgagor should each year pay two per cent of an outstanding bond issue. In rejecting the taxpayer's claim for deduction, the court said: "A contract which requires a payment irrespective of earnings and profits cannot be said to deal expressly with the disposition of earnings and profits of the taxable year."

See, also, C. C. Clark, Inc. v. United States, 5 Cir., 126 F.2d 292; Nevada-Massachusetts Co. v. Commissioner of Internal Revenue, 9 Cir., 128 F.2d 347; Clover Splint Coal Co. v. Commissioner of Internal Revenue, 3 Cir., 130 F.2d 52.

The decision is reversed, and the cause is remanded to the Tax Court of the United States for further consideration under Section 501 of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Acts, amending the Revenue Act of 1936.